

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## RICHMOND DIVISION

ERIC DANTE PITT,
**For himself and on behalf of all**
**similarly situated individuals.**

   **Plaintiffs,**

v.

           **CIVIL ACTION NO.:** 3: 11 cv 697

K-Mart Corporation, a wholly owned subsidiary
of Sears Holdings Corporation

   **Defendant.**

---

## CLASS COMPLAINT

---

   COMES NOW, the Plaintiff, Eric D. Pitt, on behalf of himself and all similarly situated individuals and alleges the following claims:

### INTRODUCTION

   1. This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq.*  The FCRA imposes on employers that use a consumer's public records background check several important procedural requirements designed to protect consumers like Plaintiff.  Plaintiff applied for a position with Defendant, and Defendant used an unauthorized consumer report which it obtained from a credit reporting agency to reject Plaintiff for employment.  In doing so, Defendant failed to comply with certain procedural protections and requirements imposed on it by the FCRA.

### JURISDICTION/VENUE

   2. The Court has jurisdiction under the FCRA, 15 U.S.C. §1681 and 20 U.S.C. §1331.

3.     Plaintiff applied for a job with the Defendant, which has at least five outlets in the Richmond area in this District and Division.

4.     K-Mart maintains its registered agent in Glen Allen which is also located in this District and Division.

5.     Venus is proper in this court under 28 U.S.C. §1391(b).

### NAMED PARTIES

6.     Eric D. Pitt (hereinafter "Edwards" or "Plaintiff") is a citizen of the Commonwealth of Virginia and a "consumer" as protected and governed by the FCRA.

7.     K-Mart Corporation (hereinafter "K-Mart" or "Defendant") is a wholly owned subsidiary of Sears Holdings Corporation.

8.     K-Mart ranks among the nation's largest fashion apparel, cosmetics and home furnishings retailers with over 1,200 locations spanning 49 states.   It has tens of thousands of employees and a high employee turnover rate.

9.     At all times relevant hereto, K-Mart was a "user" of the consumer report of Plaintiff, as governed by the FCRA.

### UNNAMED PARTIES

10.     Sears Holdings Corporation (hereinafter "SHC") is a publicly traded company and the nation's fourth largest broadline retailer with approximately 4000 full-line and specialty retail stores in the United States and Canada.

11.     HireRight (hereinafter "HireRight") supplied the consumer report for Plaintiff to Defendant.

12.     HireRight was and is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f).

2

13.     HireRight was and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

14.     HireRight was and is disbursing such consumer reports to third parties under contract for monetary compensation.

15.     Upon information and belief, Defendant also obtained consumer reports purportedly for employment purposes from additional consumer reporting agencies during the FCRA statute of limitations period.

16.     Upon information and belief, any additional consumer reporting agencies that supplied consumer reports purportedly for employment purposes to Defendant were regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. § 1681(d) to third parties.

17.     Each individual to whom Defendant provided a written disclosure and from whom Defendant obtained written authorization to obtain a consumer report for employment purposes, and then obtained such a report, is a prospective class member.

18.     Those employees and prospective employees who suffered an adverse employment decision based in whole or in part on the reports are included in the prospective sub-class.

## FACTS AS TO PITT

19.     Pitt applied online for a job with K-Mart on or about July 3, 2011.

20.     In connection with the online application process, K-Mart presented Plaintiff with a notice concerning consumer and investigative consumer reports attached as **Exhibit A**.

3

21.     On July 5, 2011 Defendant requested a pre-employment criminal record check from HireRight regarding Plaintiff.

22.     A few days later Defendant invited Plaintiff to K-Mart for a personal interview.

23.     A few days later Defendant called Plaintiff and offered him a job.   In addition, Defendant requested that Plaintiff come to K-Mart to complete various papers in connection with his hiring.

24.     During the meeting when he signed the post-offer papers, K-Mart told him that he could not start until K-Mart received the results of his criminal background check.

25.     On Wednesday July 27, 2011 Plaintiff received the letter attached as **Exhibit B** from HireRight on behalf of Sears Holdings Corporation and K-Mart.

26.     Included with the letter was a so-called Summary of your rights under the Fair Credit Reporting Act which is attached as **Exhibit C**.

27.     Also included in the letter purportedly from Sears Holdings Management Corporation, Human Resources, was a copy of the criminal background check prepared by USIS, also known as HireRight.

28.     According to the criminal background report that was requested on July 5, 2011 and completed on July 20, 2011.   Upon receipt of the foregoing documents, Plaintiff telephoned K-Mart.

29.     Plaintiff explained that the report included misdemeanor convictions from 2002, which should not have been considered by K-Mart because the application only purported to cover the seven years immediately preceding his application.

30.     The K-Mart representative said that once the convictions were "in the system"

there was nothing K-Mart could do about it, and he would not be hired after all.

## FACTS COMMON TO ALL CLASS MEMBERS

31.     Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain

a "consumer report" about employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position
> over which the Secretary of Transportation may establish qualifications], a *person* may not
> procure a *consumer report, or cause a consumer report to be procured, for employment
> purposes with respect to any consumer, unless –
>
> a.     a *clear and conspicuous disclosure has been made in writing* to the consumer at
>        any time before the report is procured or caused to be procured, *in a document that
>        consists solely of the disclosure*, that a consumer report may be obtained for e
>        employment purposes; and
>
> b.     the consumer has authorized in writing (which authorization may be made on the
>        document referred to in clause (i)) the procurement of the report by that person.

32.     The FCRA requires that the disclosure be "in writing".    Absent the E-Sign Act,

an electronic disclosure is not one made "in writing".

33.     The only means to "legalize" the electronic signature application of Defendant is

through application of the E-Sign Act.

34.     The E-Sign Act does not apply to the Defendant's electronic application,

however, because the term "Consumer" in the Act is defined as "an individual who obtains

through a transaction, products, or services "which are used primarily for personal, family, or

household purposes".

35.     A job applicant does not fit the definition of consumer, and therefore the E-Sign

Act does not authorize Defendant's electronic application.

36.     If the E-Sign act applies to and effectively authorizes Defendant's E-mail

5

application process, then, nevertheless, the purported disclosure in the electronic application violates the FCRA.

37.     More specifically, in the second sentence of paragraph 1, Kmart discloses that SHC may request consumer reports or investigative consumer reports for the additional purpose of "evaluation and response" . . . "in the event that claims or disputes between you and SHC are filed with third parties" . . . "regardless of whether you remain in the employ of SHC at the time such claims or disputes arise."

38.     Translated, if the consumer files a suit or an arbitration against SHC, or vice versa, even after employment has ended, SHC may obtain a consumer report or investigative consumer report.

39.     Section 1681a(h) defines "employment purposes" as "for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee."   All of that is expressly covered by the first sentence of paragraph 1.

40.     The second sentence covers something else (as evidenced by the use of the word "additionally").   Therefore, Kmart has violated the stand alone requirement of § 1681b(b)(2)(A)(i).

41.     Nothing in the second sentence of paragraph 1 limits the disputes to which this disclosure applies to employment related disputes.

42.     The second sentence disclosure would include a consumer report obtained for the purpose of evaluating and responding to a former employee's claim of product liability arising in connection with injuries totally unrelated to employment, for example.

43.     The disclosure form fails as a § 1681d(a) disclosure because section 1681d(a)(1)

6

requires that the person procuring the investigative consumer report disclose to the consumer that

an investigative consumer report "including information as to his character, general reputation,

personal characteristics, and mode of living, whichever are applicable" may be made.   The Kmart

disclosure does not include any such listing of the type of information to be included.      37.

44.   The Kmart form also fails as a § 1681d(a) disclosure because it fails to include a

statement informing the consumer of his right to request the additional "nature and scope"

disclosures and the written summary of the consumer FCRA rights.

45.   Inasmuch as the Kmart disclosure form does not comply with the requirements of §

1681d(a) relative to investigative consumer reports, the inclusion all language pertaining to

investigative consumer reports is pointless clutter.

46.   In addition the K-Mart disclosure provides unnecessary, vague, and legally

irrelevant information, and as a result it is ambiguous and misleading.

47.   As a result of the defective disclosure, Defendant procured a consumer report for

Plaintiff and those similarly situated for employment purposes without first obtaining a proper,

written authorization to do so.

48.   Additionally, § 1681b(b)(3)(A) of the FCRA regulates the conduct of any person

who uses a "consumer report" to take an adverse action against any employees or prospective

employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a
> position over which the Secretary of Transportation may establish qualifications],
> in using a consumer report for employment purposes, before taking any adverse
> action based in whole or in part on the report, the person intending to take such
> adverse action shall provide to the consumer to whom the report relates –
>
> (i)      a copy of the report; and

(ii)   a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

49.   The purpose of 1681b(b)(3)(A) is to provide a prospective or current employees a sufficient amount of time to review the consumer report, discuss the report with the prospective employee, correct any inaccuracies or omissions and notify the prospective employer of these inaccuracies before an adverse action is taken.

50.   Defendant provided Plaintiff with a copy of his criminal background report and a summary of his FCRA rights, but the FCRA rights summary was the 1997 form prescribed by the FTC, not the 2005 form. A copy of the 2005 form is attached as **Exhibit D**.

51.   The 2005 form, which Defendant failed to send to Plaintiff and similarly situated applicants, is different from the 1997 form in many material respects.   The 2005 form includes the following rights not included in the 1997 form used by Defendant:

a.   A Spanish header referring people to a website where the rights are provided in Spanish.

b.   The right to dispute incomplete or inaccurate information, whereas the old form only addresses inaccurate information.

c.   The right to ask for a credit score, usually at your own expense, which right is not included in the old form.

d.   The contact information at the end of the form, including addresses and telephone numbers, is substantially incorrect and out of date.   For example, for CRAs the number given for the FTC is incorrect. For the Federal Reserve the address is wrong, the telephone number is wrong, and the telephone number is not a toll-free number, whereas the number on the current form is a toll-free number.   For credit unions the telephone number is wrong.

52.   The Defendant had six years to convert to the proper form, but it failed to do so.

### Defendant Acted Willfully

53.   Defendant knew or should have known about it legal obligations under the FCRA.

8

These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

54.     Defendant obtained or had available substantial written materials which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

55.     The statutory language and mandates restricting and governing Defendants' business with respect to the FCRA have been in effect for decades.

56.     Defendant conduct was at least reckless in failing to make an appropriate and effective effort to ascertain the FCRA provisions governing its hiring and firing process.

57.     Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and depriving Plaintiff and other members of the class of their rights under the FCRA.

58.     As a result of these FCRA violations, Defendant is liable to Plaintiff and to each FCRA Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2),   and for attorneys fees and costs pursuant to §1681n and §1681o.

59.     Plaintiff and FCRA Class Members are entitled to equitable relief against Defendants requiring its compliance with the FCRA in all future instances and enjoining their future violations of the FCRA.

## CLASS ACTION ALLEGATIONS

60.     **The FCRA Class**. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiff brings this action for himself and on behalf of a class (the "Class") initially defined as follows:

9

All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) to whom Defendants provided a copy of the disclosure attached as Exhibit A or some reasonably similar variation thereof, with the result that they were the subject of a consumer report which was used by Defendant to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency.

61.   **The FCRA Sub-Classes.**   Plaintiff also alleges the following FCRA Sub-Classses, of which Plaintiff is a member:

All employees or prospective employees of Defendants residing in the United States (including all territories and other political subdivisions of the United States) who were the subject of a consumer report which was used by Defendants to make an employment decision during the FCRA statute of limitations period, 15 U.S.C. §1681p, next preceding the filing of this action and during its pendency, against whom Defendants took an adverse action based in whole or in part on information contained in the consumer report before providing a description in writing of the rights of the consumer under the FCRA, as required by the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii);

62.   **Numerosity. Fed. R. Civ. P. 23(a)(1).**   The Class members are so numerous that joinder of all is impractical. The names and addresses of the Class members are identifiable through documents maintained by the Defendant, and the Class members may be notified of the pendency of this action by published and/or mailed notice.

63.   **Existence and Predominance of Common Questions of Law and Fact. Fed. R. Civ. P. 23(a)(2).**   Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting only individual members.  These common legal and factual questions include, among other things:

a.   Whether the E-Sign Act applies to and authorizes the Defendant's application process under the FCRA.

b.   Whether the Defendant violated §1681b(b)(2)(A) by failing to make a

10

"clear and conspicuous" disclosure;

c.    Whether Defendant violated §1681b(b)(2)(A) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure;

d.    Whether Defendant obtained a written authorization to procure or cause to be procured consumer reports for employment purposes 681b(b)(2)(A)(ii);

e.    Whether the FCRA Rights Summary provided by Defendant to Plaintiff and similarly situated individuals is complete and legally effective.

f.    Whether Defendant knowingly or intentionally acted in conscious disregard of the rights of the consumers;

64.    **Typicality. FED. R. CIV. P. 23(a)(3)).**  Plaintiff's claims are typical of the claims of each Class member.   Plaintiff for class certification purposes seeks only statutory and punitive damages.   Plaintiff would only seek individual or actual damages if class certification is denied. In addition, Plaintiff is entitled to relief under the same causes of action as the other members of the Class.

65.    **Adequacy.** Plaintiff is an adequate representative of the Class because his interests coincide with, and are not antagonistic to, the interests of the members of the Class he seeks to represent, he has retained counsel competent and experienced in such litigation, and he intends to prosecute this action vigorously.   FED. R. CIV. P. 23(a)(4).   Plaintiff and his Counsel will fairly and adequately protect the interests of members of the Class.

66.    **Superiority.**   Questions of law and fact common to the Class members predominate over questions affecting only individual members, and a class action is superior to other available methods for fair and efficient adjudication of the controversy.   FED. R. CIV. P.

11

23(b)(3).  The statutory and punitive damages sought by each member are such that individual prosecution would prove burdensome and expensive given the complex and extensive litigation necessitated by Defendant's conduct.   It would be virtually impossible for the members of the Class individually to redress effectively the wrongs done to them.   Even if the members of the Class themselves could afford such individual litigation, it would be an unnecessary burden on the courts.   Furthermore, individualized litigation presents a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and to the court system presented by the complex legal and factual issues raised by Defendant's conduct.   By contrast, the class action device will result in substantial benefits to the litigants and the Court by allowing the Court to resolve numerous individual claims based upon a single set of proof in just one case.

67.    **Injunctive Relief Appropriate for the Class.**   Class certification is appropriate because Defendant has acted on grounds generally applicable to the Class, making appropriate equitable injunctive relief with respect to Plaintiff and the Class members. FED. R. CIV. P. 23(b)(2).

## COUNT ONE: VIOLATION OF THE FCRA §1681b(b)(2)(A)(i)

68.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

69.    Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A)(i), because it failed to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure to applicants and employees that a consumer report may be obtained for employment purposes.

70.    Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

12

71.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

72.     In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT TWO: VIOLATION OF THE FCRA §1681b(b)(2)(A)(i)

73.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

74.     Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A)(ii), because it failed to obtain a valid authorization in writing to procure a consumer report for employment purposes from Plaintiff and those similarly situated applicants and employees.

75.     Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

76.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

77.     In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT THREE:   VIOLATION OF THE FCRA § 1681b(b)(3)(A)(ii)

78.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

79.     Defendant willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because it failed to provide Plaintiff and all other similarly situated applicants and employees an accurate and

13

current summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on the consumer report.

80.     Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

81.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

82.     In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

83.     Every paragraph in this Complaint is hereby incorporated into every other paragraph.

WHEREFORE, Plaintiff and the Class Members pray for relief as follows:

1.     an Order certifying the proposed FCRA class herein under Federal Rule 23 and appointing Plaintiff and his undersigned counsel of record to represent same;

2.     the creation of a common fund available to provide notice of and remedy Defendant's FCRA violations;

3.     statutory and punitive damages;

4.     injunctive relief as pled;

5.     attorney's fees, expenses and costs;

6.     pre-judgment and post-judgment interest as provided by law; and

7.     such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

14

**ERIC DANTE PITT,**
**For himself and on behalf of all similarly situated**
**individuals.**

By: _____
                Christyen Colt North
                        Of Counsel
                october 14, 2011

Christopher Colt North
VSB #16955
Attorney for Plaintiff
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:     (757) 873-8375
Email: cnorthlaw@aol.com