UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

ERIC DANTE PITT,
For himself and on behalf of all
similarly situated individuals.

       Plaintiffs,

v.                               CIVIL ACTION NO.: 3:11-cv-00697-JAG

K-Mart Corporation, a wholly owned subsidiary
of Sears Holdings Corporation

and

Sears Holdings Corporation,

       Defendants.

---

## AMENDED CLASS COMPLAINT

---

COMES NOW, the Plaintiff, Eric D. Pitt, on behalf of himself and all similarly situated individuals and alleges the following claims:

### INTRODUCTION

1.     This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq*. The FCRA imposes on employers that use a consumers public records background check several important procedural requirements designed to protect consumers like Plaintiff. Plaintiff applied for a position with K-Mart, and Defendants used an unauthorized consumer report, which it obtained from a consumer-reporting agency to reject Plaintiff for employment. In doing so, they failed to comply with certain procedural protections and requirements imposed by the FCRA.

**JURISDICTION/VENUE**

2.     The Court has jurisdiction under the FCRA, 15 U.S.C. §1681 and 20 U.S.C. §1331.

3.     Defendants maintain their registered agent in Glen Allen, which is also located in this District and Division.

4.     The job application process alleged herein occurred in this District and Division.

**NAMED PARTIES**

5.     Eric D. Pitt (hereinafter "Edwards" or "Plaintiff") is a citizen of the Commonwealth of Virginia and a "consumer" as protected and governed by the FCRA.

6.     Defendant Sears Holdings Corporation ("Sears") is one of the nation's largest retailers with over 4,000 full-line and specialty retail stores in the United States and Canada and the nation's largest provider of home services. It operates through its subsidiaries, including Sears, Roebuck and Co. and Kmart Corporation.

7.     Sears is the entity that resulted from the 2005 merger of retailers Kmart and Sears. The company markets jointly between both companies.   And it jointly manages both companies under the Sears Holding Corporation.

8.     The subsidiary entities owned and controlled by Sears operate their human resources decisions and policies together under Sears.  In particular, Sears itself administers, operates, manages and conducts the background-check process for its subsidiaries.  Sear itself has the contractual relationship with the principal consumer-reporting agency used for such checks – HireRight.  Sears itself is the entity that actually obtains and uses such consumer reports on behalf of its subsidiaries.

9.     K-Mart Corporation (hereinafter "K-Mart" or "Defendant") is a wholly owned

2

subsidiary of Sears Holdings Corporation.

10.     At all times relevant hereto, both Sears and K-Mart were a "user" of the consumer report of Plaintiff, as governed by the FCRA.  K-Mart was the employer and entity with whom the Plaintiff would have been employed, while Sears was the entity that directly obtained and purchased the Plaintiff's consumer report.  Hereafter these two Defendants are properly alleged collectively and/or interchangeably.

## UNNAMED PARTIES

11.     HireRight (hereinafter "HireRight") supplied the consumer report for Plaintiff to Defendant.  HireRight was and is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f).

12.     HireRight was and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

13.     In addition to its role as a consumer-reporting agency, HireRight was also the delegee of Defendants for the purpose of fulfilling their duties to provide the various pre-adverse and post-adverse action notices, and other disclosures, required by the FCRA.

14.     The Defendants' duties under the FCRA are non-delegable, meaning that regardless of the defendants' reliance on HireRight, HireRight's failures to perform in accordance with Defendants' FCRA duties are fully actionable as if they were performed directly by Defendants.

15.     Upon information and belief, Defendants also obtained consumer reports purportedly for employment purposes from additional consumer reporting agencies during the

3

FCRA statute of limitations period.

16.     Upon information and belief, any additional consumer reporting agencies that supplied consumer reports purportedly for employment purposes to Defendants were regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. §1681(d) to third parties.

## FACTS AS TO PITT

17.     Pitt applied online for a job with K-Mart on or about July 3, 2011.

18.     In connection with the online application process, Defendants presented Plaintiff with a notice concerning consumer and investigative consumer reports attached as **Exhibit A**. No other disclosures were made to the Plaintiff and no documents were mailed or delivered to the Plaintiff prior to the time that Defendants obtained and used the Plaintiff's consumer report.

19.     On July 5, 2011 Defendants requested a pre-employment criminal background report from HireRight regarding Plaintiff.

20.     A few days later K-Mart invited Plaintiff to K-Mart for a personal interview.

21.     A few days later K-Mart called Plaintiff and offered him a job.  In addition, it requested that Plaintiff come to K-Mart to complete various papers in connection with his hiring.

22.     During the meeting when he signed the post-offer papers, K-Mart told him orally that he could not start until Defendants received the results of his criminal background check.

23.     On information and belief, Plaintiff alleges that through their contract with HireRight, Defendants delegated to HireRight part of the decisioning process to determine if the Plaintiff, and putative class members, was and were eligible for employment.  It is customary for

4

a background check company such as HireRight to be responsible for applying pre-determined criteria to the reports it creates to classify and decision employment applicants as eligible or ineligible for hire and then provide that adjudicated result to the employer as an output. That is, HireRight does not merely forward a copy of the report, but instead codes the consumer as hirable or as unhireable.

24.     Plaintiff alleges on information and belief that upon HireRight's generation of his consumer report, HireRight used – as Defendants' agent – the report to decision him as ineligible for hire.

25.     This "HireRight" decision constituted an adverse action based in whole or in part on the Plaintiff's consumer report. This is true whether or not the decision could have been overruled at a later stage.

26.     After such decision, on Wednesday July 27, 2011 Plaintiff received the letter attached as **Exhibit B** from HireRight on behalf of Defendants.

27.     This letter and notice was received after Defendants, through HireRight, had already used the Plaintiff's consumer report in whole or in part to take an adverse action.

28.     Included with the letter was a so-called 'Summary of Your Rights under the Fair Credit Reporting Act' that is attached as **Exhibit C**.

29.     Also included in the letter purportedly from Defendants was a copy of the criminal background check prepared by USIS, also known as HireRight.

30.     According to the criminal background report, it was allegedly requested on July 5, 2011 and completed on July 20, 2011.

31.     Defendants' adverse classification of Mr. Pitt thus occurred instantly upon completion of the HireRight report on July 20, 2011.

32.     Upon receipt of the foregoing documents (Exhibits B and C), Plaintiff telephoned Defendants.

33.     Plaintiff explained that the report included misdemeanor convictions from 2002, which should not have been considered by Defendants because the application only purported to cover the seven years immediately preceding his application.

34.     Defendants' representative said that once the convictions were "in the system" there was nothing that could be done, and Mr. Pitt would not be hired after all.

35.   Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

36.   The purpose of §1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies and to notify the prospective employer of these inaccuracies before an adverse action is taken.

37.   Defendants failed to provide a copy of the consumer report in a sufficient amount of time before they took the adverse action to allow Plaintiff to discuss the report with Defendants or otherwise respond before the adverse action was taken.

6

38.   Defendants failed to hire/fired Plaintiff without providing him with any advance notice that they were going to take that adverse action, without providing him with a copy of the consumer report before they took adverse action, and without providing him with a lawful summary of his rights under the FCRA before they took adverse action, or at all.

39.   Upon information and belief, Plaintiff alleges that the process and procedures followed by Defendants in his case are also the Defendants' standard hiring practices for FCRA compliance as to all putative class members.

40.   Defendant Acted Willfully.   Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

41.   Defendants obtained or had available substantial written materials that apprised them of its duties under the FCRA.

42.   Despite knowing of these legal obligations, Defendants acted recklessly and/or consciously in breaching their known duties and depriving Plaintiff and other members of the class of their rights under the FCRA.

## FACTS COMMON TO ALL CLASS MEMBERS

43.   Section 1681b(b)(2)(A) of the FCRA regulates the conduct of persons who obtain a "consumer report" about employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], a *person* may not procure a *consumer report*, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless -

a.  a *clear and conspicuous disclosure has been made in writing* to the consumer at any time before the report is procured or caused to be procured, *in a document that consists solely of the disclosure*, that a consumer report may be obtained for e employment purposes; and

b.  the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

44.     The FCRA requires that the disclosure be "in writing".  Absent the E-Sign Act, an electronic disclosure is not one made "in writing".

45.     The only means to "legalize" the electronic signature application of Defendant is through application of the E-Sign Act.

46.     The E-Sign Act does not apply to the Defendant's electronic application, however, because the term "Consumer" in the Act is defined as "an individual who <u>obtains</u> through a transaction, products, or services "which are used primarily for personal, family, or household purposes".

47.     A job applicant does not fit the definition of consumer, and therefore the E-Sign Act does not authorize Defendant's electronic application.

48.     If the E-Sign act applies to and effectively authorizes Defendant's E-mail application process, then, nevertheless, the purported disclosure in the electronic application violates the FCRA.

49.     More specifically, in the second sentence of paragraph 1, Kmart discloses that SHC may request consumer reports or investigative consumer reports for the additional purpose of "evaluation and response" . . . "in the event that claims or disputes between you and SHC are filed with third parties" . . . "regardless of whether you remain in the employ of SHC at the time such claims or disputes arise."

8

50.     Translated, if the consumer files a suit or an arbitration against SHC, or vice versa, even after employment has ended, SHC may obtain a consumer report or investigative consumer report.

51.     Section 1681a(h) defines "employment purposes" as "for the purpose of evaluating a consumer for employment, promotion, reassignment or retention as an employee." All of that is expressly covered by the first sentence of paragraph 1.

52.     The second sentence covers something else (as evidenced by the use of the word "additionally").     Therefore, Kmart has violated the stand alone requirement of §1681b(b)(2)(A)(i).

53.     Nothing in the second sentence of paragraph 1 limits the disputes to which this disclosure applies to employment related disputes.

54.     The second sentence disclosure would include a consumer report obtained for the purpose of evaluating and responding to a former employee's claim of product liability arising in connection with injuries totally unrelated to employment, for example.

55.     The disclosure form fails as a § 1681d(a) disclosure because section 1681d(a)(1) requires that the person procuring the investigative consumer report disclose to the consumer that an investigative consumer report "including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable" may be made.   The Kmart disclosure does not include any such listing of the type of information to be included.

56.     The Kmart form also fails as a § 1681d(a) disclosure because it fails to include a statement informing the consumer of his right to request the additional "nature and scope" disclosures and the written summary of the consumer FCRA rights.

9

57.    Inasmuch as the Kmart disclosure form does not comply with the requirements of § 1681d(a) relative to investigative consumer reports, the inclusion all language pertaining to investigative consumer reports is pointless clutter.

58.    In addition the K-Mart disclosure provides unnecessary, vague, and legally irrelevant information, and as a result it is ambiguous and misleading.

59.    As a result of the defective disclosure, Defendant procured a consumer report for Plaintiff and those similarly situated for employment purposes without first obtaining a proper, written authorization to do so.

60.    Additionally, §1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates -
>
> (i)    a copy of the report; and
>
> (ii)    a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

61.    The purpose of §1681b(b)(3)(A) is to provide a prospective or current employees a sufficient amount of time to review the consumer report, discuss the report with the prospective employee, correct any inaccuracies or omissions and notify the prospective employer of these inaccuracies before an adverse action is taken.

62.    Defendant provided Plaintiff with a copy of his criminal background report and a

10

summary of his FCRA rights, but the FCRA rights summary was the 1997 form prescribed by the FTC, not the 2005 form. A copy of the 2005 form is attached as **Exhibit D**.

63.   The 2005 form, which Defendant failed to send to Plaintiff and similarly situated applicants, is different from the 1997 form in many material respects.  The 2005 form includes the following rights not included in the 1997 form used by Defendant:

 a.   A Spanish header referring people to a website where the rights are provided in Spanish.

 b.   The right to dispute incomplete or inaccurate information, whereas the old form only addresses inaccurate information.

 c.   The right to ask for a credit score, usually at your own expense, which right is not included in the old form.

 d.   The contact information at the end of the form, including addresses and telephone numbers, is substantially incorrect and out of date.  For example, for CRAs the number given for the FTC is incorrect. For the Federal Reserve the address is wrong, the telephone number is wrong, and the telephone number is not a toll-free number, whereas the number on the current form is a toll-free number.  For credit unions the telephone number is wrong.

64.   The Defendant had six years to convert to the proper form, but it failed to do so.

**Defendant Acted Willfully**

65.   Defendant knew or should have known about it legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

66.   Defendant obtained or had available substantial written materials, which apprised it of its duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

67.   The statutory language and mandates restricting and governing Defendants'

11

business with respect to the FCRA have been in effect for decades.

68.     Defendant conduct was at least reckless in failing to make an appropriate and effective effort to ascertain the FCRA provisions governing its hiring and firing process.

69.     Despite knowing of these legal obligations, Defendant acted consciously in breaching its known duties and depriving Plaintiff and other members of the class of their rights under the FCRA.

70.     As a result of these FCRA violations, Defendant is liable to Plaintiff and to each FCRA Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2),  and for attorneys fees and costs pursuant to §1681n and §1681o.

71.     Plaintiff and FCRA Class Members are entitled to equitable relief against Defendants requiring its compliance with the FCRA in all future instances and enjoining their future violations of the FCRA.

## CLASS ACTION ALLEGATIONS

72.     Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of the "FCRA § 1681b(b)(2) Class" initially defined below:

> Consumers residing in the United States who applied online for
> employment with Sears Holding Corporation or any of its
> subsidiaries, and about whom Sears Holding Corporation or any of
> its subsidiaries procured a criminal background report for
> employment purposes during the application process.

73.     Plaintiffs also alleges the following "FCRA § 1681b(b)(3) Sub-class", of which he is also a member:

> All natural persons residing in the United States (a.) who applied
> for an employment position with Sears Holding Corporation or any

12

of its subsidiaries, (b.) as part of this application process, were the subject of a consumer report requested from HireRight (or its predecessor) by Sears Holding Corporation or any of its subsidiaries during the applicable limitations period as established by 15 U.S.C. 1681p, preceding the filing of this action and during its pendency, (c.) where HireRight (or its predecessor) then reviewed (manually or electronically) the report and coded it with a result code that could disqualify the class member from employment by Sears Holding Corporation or any of its subsidiaries, (d.) which consumer was not then approved or hired for the position.

74.     Upon information and belief, the putative Class exceeds 500 members. Information concerning the exact size of the putative class is within the exclusive possession of Defendants.

75.     The Class members are so numerous that joinder of all members is impracticable.

76.     Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendants' unlawful conduct in violation of the FCRA.

77.     Plaintiffs will fairly and adequately protect the interest of the Class members and has retained counsel competent and experienced in complex class-action litigation.  Plaintiff is a member of the Class and Sub-Class and does not have any interests antagonistic to or in conflict with the members of the Class or the Sub-Class.  Further, Plaintiff's claims are the same as those of the Class, which all arise from the same operative facts and are based upon the same legal theories.

78.     Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including, by example only and without limitation:

a.      Whether Defendants' standard procedure violated 15

13

U.S.C. §1681b(b)(2)(A)(i) by failing to make a "clear and conspicuous" disclosure in a document that consists solely of the disclosure;

b.      Whether it is Defendants' standard procedure to obtain a written authorization to procure or cause to be procured consumer reports for employment purposes required by §1681b(b)(2)(A)(ii);

c.      Whether it is Defendants' standard procedure to provide a copy of the consumer report to the applicant or employee before declining to hire or discharging the applicant or employee based on the results thereof as required by 15 U.S.C. §1681b(b)(3)(A)(i);

d.      Whether Defendants provided a copy of a lawful summary of the applicant or employee's rights under the FCRA before declining to hire or discharging the applicant or employee as required by 15 U.S.C. §1681b(b)(3)(A)(ii);

e.      Whether Defendants provided oral, written or electronic notice of the consumer's right to obtain a free copy of the consumer report on the consumer from the consumer reporting agency that prepared the report as required by 15 U.S.C. § 1681m(a)(3)(A));

f.      Whether Swift's failures to comply with the FCRA were willful.

79.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Class is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

80.     Further, the prosecution of several actions by individual members of the Class would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Class.  Additionally, individual actions by members of the Class may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to

14

protect their interests.

## COUNT ONE: VIOLATION OF THE FCRA §1681b(b)(2)(A)(i)

81.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

82.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A)(i), because they failed to provide a clear and conspicuous written disclosure in a document that consists solely of the disclosure to applicants and employees that a consumer report may be obtained for employment purposes.

83.     Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. §1681n(a)(1)(A).

84.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

85.     In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT TWO: VIOLATION OF THE FCRA §1681b(b)(2)(A)(i)

86.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

87.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(2)(A)(ii), because they failed to obtain a valid authorization in writing to procure a consumer report for employment purposes from Plaintiff and those similarly situated applicants and employees.

88.     Plaintiff seeks statutory damages for himself and all others similarly situated for

this violation pursuant to 15 U.S.C. §1681n(a)(1)(A).

89.    Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. §1681n(a)(2).

90.    In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

## COUNT THREE: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(ii)

91.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

92.    Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), as to the Class, because they failed to provide Plaintiff and all other similarly situated applicants and employees the actual summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on a consumer report.

93.    Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

94.    Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

95.    In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

16

## COUNT FOUR:  VIOLATION OF THE FCRA §1681b(b)(3)(A)(ii)

96.     Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

97.     Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because they failed to provide Plaintiff and all other similarly situated applicants and employees an accurate and current summary of rights required by this section of the FCRA before taking an adverse action that was based in whole or in part on the consumer report.

98.     Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. §1681n(a)(1)(A).

99.     Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. §1681n(a)(2).

100.    In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff and the Class Members pray for relief as follows:

1.    an Order certifying the proposed FCRA class herein under Federal Rule 23 and appointing Plaintiff and his undersigned counsel of record to represent same;

2.    the creation of a common fund available to provide notice of and remedy Defendant's FCRA violations;

3.    statutory and punitive damages;

4.    injunctive relief as pled;

5.    attorney's fees, expenses and costs for each Count pursuant to Rule 23 and 15 U.S.C. §§ 1681n and 1681o;

17

6.   pre-judgment and post-judgment interest as provided by law; and

7.   such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**ERIC DANTE PITT,**
**For himself and on behalf of all similarly**
**situated individuals.**

_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@cox.net

18

Christopher Colt North
VSB #16955
Attorney for Plaintiff
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax:   (757) 873-8375
E-mail: cnorthlaw@aol.com


## CERTIFICATE OF SERVICE

I hereby certify that on the  16th   day of March 2012, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system, which will then send a

notification of such filing (NEF) to all counsel of record.

John C. Lynch
Troutman Sanders LLP
P. O. Box 61185
222 Central Park Ave
Suite 2000
Virginia Beach, VA 23462
Email: john.lynch@troutmansanders.com


_____/s/_____
Leonard A. Bennett, Esq.
VSB #37523
Attorney for Plaintiff
CONSUMER LITIGATION
ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
lenbennett@cox.net

19