UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
RICHMOND DIVISION

**ERIC DANTE PITT,**
**For himself and on behalf of all**
**similarly situated individuals.**

   **Plaintiff,**

v.            CIVIL ACTION NO.: 3:11-cv-00697-JAG

**K-MART CORPORATION, a wholly owned subsidiary**
of Sears Holdings Corporation

and

**SEARS HOLDINGS CORPORATION,**

**Defendants.**

___

**SECOND AMENDED CLASS COMPLAINT**
___

  COMES NOW, the Plaintiff, Eric Dante Pitt, on behalf of himself and all similarly situated individuals and allege the following claims:

**INTRODUCTION**

  1. This action is brought under the Federal Fair Credit Reporting Act (FCRA), 15 U.S.C. §1681, *et seq*. The FCRA imposes on employers that use a consumers public records background check several important procedural requirements designed to protect consumers like Plaintiff. Plaintiff applied for a position with K-Mart, and Defendants used a consumer report, which they obtained from a consumer-reporting agency to reject Plaintiff for employment. In doing so, they failed to comply with certain procedural protections and requirements imposed by the FCRA.

## JURISDICTION/VENUE

2. The Court has jurisdiction under the FCRA, 15 U.S.C. §1681 and 20 U.S.C. §1331.

3. Defendants maintain their registered agent in Glen Allen, which is also located in this District and Division.

4. The job application process alleged herein occurred in this District and Division.

## NAMED PARTIES

5. Eric Dante Pitt (hereinafter "Plaintiff") is a citizen of the Commonwealth of Virginia and a "consumer" as protected and governed by the FCRA.

6. Defendant Sears Holdings Corporation ("Sears") is one of the nation's largest retailers with over 4,000 full-line and specialty retail stores in the United States and Canada and the nation's largest provider of home services. It operates through its subsidiaries, including Sears, Roebuck and Co. and Kmart Corporation.

7. Sears is the entity that resulted from the 2005 merger of retailers Kmart and Sears. The company markets jointly between both companies. And it jointly manages both companies under the Sears Holding Corporation.

8. The subsidiary entities owned and controlled by Sears operate their human resources decisions and policies together under Sears. In particular, Sears itself administers, operates, manages and conducts the background-check process for its subsidiaries. Sear itself has the contractual relationship with the principal consumer-reporting agency used for such checks – HireRight. Sears itself is the entity that actually obtains and uses such consumer reports on behalf of its subsidiaries.

9. K-Mart Corporation (hereinafter "K-Mart" or "Defendant") is a wholly owned

subsidiary of Sears Holdings Corporation.

10. At all times relevant hereto, both Sears and K-Mart were a "user" of the consumer report of Plaintiff, as governed by the FCRA. K-Mart was the employer and entity with whom Plaintiff would have been employed. Sears was the entity that directly obtained and purchased Plaintiff's consumer report. Hereafter these two Defendants are properly alleged collectively and/or interchangeably.

## UNNAMED PARTIES

11. HireRight Solutions, Inc. (hereinafter "HireRight") supplied the consumer reports for Plaintiff to Defendants. HireRight was and is a "consumer reporting agency" as defined in 15 U.S.C. §1681(f).

12. HireRight was and is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

13. In addition to its role as a consumer-reporting agency, HireRight was also the delegee of Defendants for the purpose of fulfilling their duties to provide the various pre-adverse and post-adverse action notices, and other disclosures, required by the FCRA.

14. Defendants' duties under the FCRA are non-delegable, meaning that regardless of Defendants' reliance on HireRight, HireRight's failures to perform in accordance with Defendants' FCRA duties are fully actionable as if they were performed directly by Defendants.

15. Upon information and belief, Defendants also obtained consumer reports purportedly for employment purposes from additional consumer reporting agencies during the FCRA statute of limitations period.

16. Upon information and belief, any additional consumer reporting agencies that

supplied consumer reports purportedly for employment purposes to Defendants were regularly engaged in the business of assembling, evaluating and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined in 15 U.S.C. §1681a(d) to third parties.

## FACTS AS TO PITT

17. Plaintiff applied for a job with K-Mart on or about July 3, 2011.

18. On July 5, 2011 Defendants requested a pre-employment criminal background report from HireRight regarding Plaintiff.

19. A few days later K-Mart invited Plaintiff to K-Mart for a personal interview.

20. A few days later K-Mart called Plaintiff and offered him a job. In addition, it requested that Plaintiff come to K-Mart to complete various papers in connection with his hiring.

21. During the meeting when he signed the post-offer papers, K-Mart told Plaintiff orally that he could not start until Defendants received the results of his criminal background check.

22. On information and belief, Plaintiff alleges that through their contract with HireRight, Defendants delegated to HireRight part of the decisioning process to determine if he, and putative class members, was and were eligible for employment. It is customary for a background check company such as HireRight to be responsible for applying pre-determined criteria to the reports it creates to classify and decision employment applicants as eligible or ineligible for hire and then provide that adjudicated result to the employer as an output. That is, HireRight does not merely forward a copy of the report, but instead codes the consumer as hireable or as unhireable.

23. Plaintiff alleges on information and belief that upon HireRight's generation of his

consumer report, HireRight – as Defendants' agent – used the report to decision him as ineligible for hire.

24. This "HireRight" decision constituted an adverse action based in whole or in part on the Plaintiff's consumer report. This is true whether or not the decision could have been overruled at a later stage.

25. Sometime before July 27, 2011, Plaintiff called K-Mart and spoke with a K-Mart representative about the progress of his background report and his pending start date. At that time, Plaintiff was told that he would not be hired as a result of information in his background report.

26. On Wednesday July 27, 2011 Plaintiff received the letter attached as **Exhibit A** from HireRight on behalf of Defendants.

27. This letter and notice was received after Defendants, through HireRight, had already used the Plaintiff's consumer report in whole or in part to take an adverse action and after the K-Mart representative had told Plaintiff, in the previously mentioned telephone call, that he would not be hired after all.

28. Included with the letter was a so-called "Summary of Your Rights under the Fair Credit Reporting Act" that is attached as **Exhibit B**.

29. Also included in the letter purportedly from Defendants was a copy of Plaintiff's criminal background check prepared by USIS, also known as HireRight.

30. According to Plaintiff's criminal background report, it was allegedly requested on July 5, 2011 and completed on July 20, 2011.

31. Defendants' adverse classification of Plaintiff thus occurred instantly upon completion of the HireRight report on July 20, 2011.

32. Upon receipt of the foregoing documents (Exhibits B and C), Plaintiff again telephoned Defendants.

33. Plaintiff explained that the report included misdemeanor convictions from 2002, which should not have been considered by Defendants because the application only purported to cover the seven years immediately preceding his application.

34. Defendants' representative said that once the convictions were "in the system" there was nothing that could be done, and Plaintiff would not be hired after all.

## FACTS COMMON TO ALL CLASS MEMBERS

35. Section 1681b(b)(3)(A) of the FCRA regulates the conduct of any person who uses a "consumer report" to take an adverse action against any employees or prospective employees as follows:

> Except as provided in subparagraph (B) [in cases of a consumer applying for a position over which the Secretary of Transportation may establish qualifications], in using a consumer report for employment purposes, before taking any adverse action based in whole or in part on the report, the person intending to take such adverse action shall provide to the consumer to whom the report relates –
>
> (i) a copy of the report; and
>
> (ii) a description in writing of the rights of the consumer under this subchapter, as prescribed by the Federal Trade Commission under section 1681g(c)(3) of this title.

36. The purpose of §1681b(b)(3)(A) is to provide a prospective or current employee a sufficient amount of time to review the consumer report, correct any inaccuracies and to notify the prospective employer of these inaccuracies before an adverse action is taken.

37. Defendants failed to provide a copy of Plaintiff's consumer report to Plaintiff before they took the adverse action so as to allow Plaintiff to discuss his report with Defendants or otherwise respond before the adverse action was taken.

38.     Defendants failed to hire/fired Plaintiff without providing him with any advance notice that they were going to take that adverse action, without providing him with a copy of his consumer report before they took adverse action, and without providing him with a lawful summary of his rights under the FCRA before they took adverse action.

39.     Upon information and belief, Plaintiff alleges that the process and procedures followed by Defendants in his case is also Defendants' standard hiring practices for FCRA compliance as to all putative class members.

40.     Defendants provided Plaintiff with a copy of his criminal background report and a summary of his FCRA rights, but the FCRA rights summary was the 1997 form prescribed by the FTC, not the 2005 form. A copy of the 2005 form is attached as **Exhibit C**.

41.     The 2005 form, which Defendants failed to send to Plaintiff and similarly situated applicants, is different from the 1997 form in many material respects. The 2005 form includes the following rights not included in the 1997 form used by Defendants:

    a.   A Spanish header referring people to a website where the rights are provided in Spanish.

    b.   The right to dispute incomplete or inaccurate information, whereas the old form only addresses inaccurate information.

    c.   The right to ask for a credit score, usually at your own expense, which right is not included in the old form.

    d.   The contact information at the end of the form, including addresses and telephone numbers, is substantially incorrect and out of date. For example, for CRAs the number given for the FTC is incorrect. For the Federal Reserve the address is wrong, the telephone number is wrong, and the telephone number is not a toll-free number, whereas the number on the current form is a toll-free number. For credit unions the telephone number is wrong.

42.     Defendants had six years to convert to the proper form, but they failed to do so.

**Defendants Acted Willfully**

43. Defendants knew or should have known about their legal obligations under the FCRA. These obligations are well established in the plain language of the FCRA and in the promulgations of the Federal Trade Commission.

44. Defendants obtained or had available substantial written materials, which apprised them of their duties under the FCRA. Any reasonable employer knows about or can easily discover these mandates.

45. The statutory language and mandates restricting and governing Defendants' business with respect to the FCRA have been in effect for decades.

46. Defendants' conduct was at least reckless in failing to make an appropriate and effective effort to ascertain the FCRA provisions governing its hiring and firing process.

47. Despite knowing of these legal obligations, Defendants acted consciously in breaching their known duties and depriving Plaintiff and other members of the class of their rights under the FCRA.

48. As a result of these FCRA violations, Defendants are liable to Plaintiff and to each FCRA Class Member, for statutory damages from $100.00 to $1,000.00 pursuant to 15 U.S.C. §1681n(a)(1)(A), plus punitive damages pursuant to 15 U.S.C. §1681n(a)(2), and for attorneys fees and costs pursuant to §1681n and §1681o.

49. Plaintiff and the FCRA Class Members are entitled to equitable relief against Defendants requiring their compliance with the FCRA in all future instances and enjoining their future violations of the FCRA.

## CLASS ACTION ALLEGATIONS

50. Pursuant to Fed. R. Civ. P. 23, Plaintiff brings this action on behalf of the "FCRA § 1681b(b)(3)(i) Class" initially defined below:

>All natural persons residing in the United States (including all territories and other political subdivisions of the United States)  (a.) who applied for an employment position with Sears Holding Corporation or any of its subsidiaries, (b.) as part of this application process, were the subject of a consumer report requested from HireRight by Sears Holding Corporation or any of its subsidiaries (c.) against whom Sears Holding Corporation or any of its subsidiaries, or HireRight acting on behalf of either, took an adverse action during the five years immediately preceding the commencement of this action or during its pendency, based in whole or in part on information contained in the consumer report, (d.) without providing a copy of the consumer report at least five business days before taking the adverse action as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(i)

51. Pursuant to Fed. R. Civ. P. 23, Plaintiff also brings this action on behalf of the "FCRA § 1681b(b)(3)(ii) Class" initially defined below:

>All natural persons residing in the United States (including all territories and other political subdivisions of the United States)  (a.) who applied for an employment position with Sears Holding Corporation or any of its subsidiaries, (b.) as part of this application process, were the subject of a consumer report requested from HireRight by Sears Holding Corporation or any of its subsidiaries, (c.) against whom Sears Holding Corporation or any of its subsidiaries, or HireRight acting on behalf of either, took an adverse action during the five years immediately preceding the commencement of this action or during its pendency, based in whole or in part on information contained in the consumer report (d) (i) without providing a description in writing of the rights of the consumer under the FCRA at least five business days before taking the adverse action as required by the FCRA, 15 U.S.C. § 1681b(b)(3)(A)(ii) or, alternatively, without providing any description of such rights other than an obsolete description that had been supplanted by a more recent description promulgated by the Federal Trade Commission or the Bureau of Consumer Financial Protection, before taking the adverse action.

52. Upon information and belief, the putative Class exceeds 500 members. Information concerning the exact size of the putative class is within the exclusive possession of Defendants.

53. The Class members are so numerous that joinder of all members is impracticable.

54. Plaintiff's claims are typical of the claims of the other Class members as all Class members were similarly affected by Defendants' unlawful conduct in violation of the FCRA.

55. Plaintiff will fairly and adequately protect the interest of the Class members and

has retained counsel competent and experienced in complex class-action litigation. Plaintiff is a member of the Class and Sub-Class and does not have any interests antagonistic to or in conflict with the members of the Class or the Sub-Class. Further, Plaintiff's claims are the same as those of the Class, which all arise from the same operative facts and are based upon the same legal theories.

56. Common questions of law and fact exist as to all Class members and predominate over any questions solely affecting individual Class members, including, by example only and without limitation:

 a. Whether it is Defendants' standard procedure to provide a copy of the consumer report to the applicant five business days before HireRight or another third party acting on Defendants's behalf codes an applicant as not hireable as required by 15 U.S.C. §1681b(b)(3)(A)(i);

 b. Whether it is Defendants' standard procedure to provide a copy of the FCRA Summary of Rights to the applicant five business days before HireRight or another third party acting on Defendants's behalf codes an applicant as not hireable as required by 15 U.S.C. §1681b(b)(3)(A)(ii);

 c. Whether it is Defendants' standard procedure to provide a copy of the consumer report to the applicant five business days before declining to hire or discharging the applicant based on the results thereof as required by 15 U.S.C. §1681b(b)(3)(A)(i);

 d. Whether it is Defendants' standard procedure to provide a copy of the FCRA Summary of Rights to the applicant five business days before declining to hire or discharging the applicant based on the results of his or her consumer report as required by 15 U.S.C. §1681b(b)(3)(A)(ii);

 e. Whether it was Defendants' standard practice, when providing the FCRA Summary of Rights to applicants or employees against whom they were considering taking adverse action based in whole or in part on their consumer reports, to provide the then most current version of the FCRA Summary of Rights promulgated by the FTC or the Bureau of Consumer Financial Protection?

 f. Whether the FCRA Summary of Rights form promulgated by the FTC in 1997 is a legally sufficient substitute for the FCRA Summary of Rights form promulgated by the FTC in 2005 or by the Bureau of Consumer

        Financial Protection thereafter, in those circumstances in which Section 1681b(b)(3)(A)(ii) requires that the FCRA Summary of Rights be provided to a applicant after 2005.

    g.    Whether Defendants' failures to comply with the FCRA were willful.

57.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because the membership of the Class is so numerous and involves claims that, taken individually, may not justify the costs and effort of bringing suit.

58.    Further, the prosecution of several actions by individual members of the Class would create a risk of varying adjudications with respect to members of the Class, as well as create inconsistent standards of conduct for those opposing the Class. Additionally, individual actions by members of the Class may be dispositive of the interests of other members not parties to the adjudication of the claim, which would impair or impede the ability of those individuals to protect their interests.

### COUNT ONE: VIOLATION OF THE FCRA § 1681b(b)(3)(A)(ii)

### (Providing Obsolete FCRA Summary of Rights)

59.    Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

60.    Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(i), as to the Class, because they failed to provide Plaintiff and all other similarly situated applicants and employees the most current version of the FCRA Summary of Rights promulgated by the FTC or the Bureau of Financial Protection as required by this section of the FCRA before taking an adverse action that was based in whole or in part on the consumer report.

61.    Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. § 1681n(a)(1)(A).

62. Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. § 1681n(a)(2).

63. In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT TWO: VIOLATION OF THE FCRA §1681b(b)(3)(A)(ii)

### (Providing Untimely FCRA Summary of Rights)

64. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth at length herein.

65. Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because they failed to provide Plaintiff and all other similarly situated applicants and employees the FCRA Summary of Rights required by this section of the FCRA at least five(5) business days before taking an adverse action that was based in whole or in part on the consumer report.

66. Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. §1681n(a)(1)(A).

67. Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. §1681n(a)(2).

68. In the alternative to the Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seek issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

### COUNT THREE: VIOLATION OF THE FCRA §1681b(b)(3)(A)(i)

### (Providing Untimely Copy of Consumer Report)

69. Plaintiff restates each of the allegations in the preceding paragraphs as if set forth

at length herein.

70. Defendants willfully violated the FCRA, 15 U.S.C. §1681b(b)(3)(A)(ii), because they failed to provide Plaintiff and all other similarly situated applicants and employees a copy of the consumer report used in whole or in part to take an adverse employment action at least five (5) business days before taking such action.

71. Plaintiff seeks statutory damages for himself and all others similarly situated for this violation pursuant to 15 U.S.C. §1681n(a)(1)(A).

72. Plaintiff seeks punitive damages and equitable relief for this violation pursuant to 15 U.S.C. §1681n(a)(2).

73. In the alternative to Plaintiff's allegations that these violations were willful, he alleges that the violations were negligent and seeks issue certification of that issue and appropriate remedy, if any, under 15 U.S.C. §1681o.

WHEREFORE, Plaintiff and the Class Members pray for relief as follows:

1. an Order certifying the proposed FCRA class herein under Federal Rule 23 and appointing Plaintiff and his undersigned counsel of record to represent same;

2. the creation of a common fund available to provide notice of and remedy Defendants' FCRA violations;

3. statutory and punitive damages;

4. injunctive relief as pled;

5. attorney's fees, expenses and costs for each Count pursuant to Rule 23 and 15 U.S.C. §§ 1681n and 1681o;

6. pre-judgment and post-judgment interest as provided by law; and

7. such other relief the Court does deem just, equitable and proper.

**TRIAL BY JURY IS DEMANDED.**

**ERIC DANTE PITT,**
**For himself and on behalf of all similarly**
**situated individuals.**


 /s/ William L. Downing
Christopher Colt North, VSB #16955
William L. Downing, VSB # 17704
Attorneys for Plaintiff
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
E-mail: cnorthlaw@aol.com
E-mail wdowninglaw@aol.com

Leonard A. Bennett, Esq., VSB #37523
Susan Mary Rotkis, VSB # _____
Attorneys for Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, Virginia 23601
(757) 930-3660 - Telephone
(757) 930-3662 – Facsimile
E-mail: lenbennett@cox.net
Email: srotkis@clalegal.com


### CERTIFICATE OF SERVICE

 I hereby certify that on the 31st day of October, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all counsel of record.

 John C. Lynch, Esq.
 Troutman Sanders LLP
 P. O. Box 61185
 222 Central Park Ave
 Suite 2000
 Virginia Beach, VA 23462
 Email: john.lynch@troutmansanders.com

 /s/ William L. Downing
Christopher Colt North, Esq., VSB #16955
William L. Downing, VSB # 17704
Attorneys for Plaintiff
The Consumer & Employee Rights Law Firm, P.C.
751-A Thimble Shoals Boulevard
Newport News, Virginia 23606
Phone: (757) 873-1010
Fax: (757) 873-8375
E-mail: cnorthlaw@aol.com
E-mail wdowninglaw@aol.com