**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

**ERIC DANTE PITT, for himself and on**
**behalf of all similarly situated individuals,**

   **Plaintiff,**

  v.               **Civil Action No. 3:11cv697**

**KMART CORPORATION,**
**A wholly owned subsidiary of Sears**
**Holdings Corporation,**

**and**

**SEARS HOLDINGS CORPORATION,**

   **Defendants.**

**DEFENDANTS' MEMORANDUM IN SUPPORT OF FINAL APPROVAL**
**AND RESPONSE TO OBJECTIONS TO THE PROPOSED SETTLEMENT**

  Kmart Corporation ("Kmart") and Sears Holdings Corporation ("Sears" and collectively with Kmart, "Defendants") join Eric Dante Pitt's ("Plaintiff") Motion for Final Approval of the Class Settlement and respectfully submit this Memorandum in Support of Final Approval and Response to the Objections to the Proposed Settlement. This Memorandum is intended to supplement Plaintiff's discussion of two factors relevant to the Court's consideration of the fairness and adequacy of the proposed settlement: the strengths and weaknesses of the parties' claims and defenses, and the reception given the proposed settlement by the class members and federal and state authorities noticed pursuant to the Class Action Fairness Act ("CAFA").

  The proposed settlement is fair, reasonable, and adequate and should be given final approval. Over the course of this litigation, Defendants have developed strong defenses to the claims asserted in the litigation. These defenses have been strengthened by recent developments

in the law, making the settlement even more attractive to class members now than when the case was first filed, and when settlement negotiations concluded.  The proposed settlement allows class members to receive substantial monetary benefits while avoiding the significant risk entailed by continued litigation.

The objections to the proposed settlement do not alter this conclusion. Notably, none of the more than fifty attorneys general served with notice of the settlement have objected. Additionally, only six class members, in a class of over 64,000 members, have objected.  The low objection and opt-out rate evidence overwhelming consent to the settlement and strongly support the adequacy of the settlement.

The nature of the objections only confirms that the settlement is fair and adequate. First, the objections do not take issue with important features of the settlement that are generally applicable to the class, such as the settlement's procedural aspects.  Second, the objections focus narrowly on individualized circumstances related to the particular objector that do not undermine the adequacy of the settlement to the class and rest on misunderstandings of liability under the Fair Credit Reporting Act ("FCRA").  As more fully discussed below, the proposed settlement provides substantial compensation to the class members without the serious risk (and delay) attendant a contested trial and subsequent appeals, and the objections offer no reason for denying final approval of the proposed settlement.

I.      **Background**

Sears is a nationally recognized integrated retailer with more than 2,500 full line and specialty retail stores in the United States and Canada.  Kmart is a wholly owned subsidiary of Sears, with numerous retail locations throughout the United States.  On October 17, 2011, Plaintiff filed a Class Action Complaint against Kmart, in which he alleged violations of the

FCRA.  On March 16, 2012, Plaintiff filed an Amended Class Complaint, in which he added Sears as a party to the litigation.  Subsequently, on October 31, 2012, Plaintiff filed a Second Amended Class Complaint.  (ECF 48).  The Second Amended Class Complaint ("Amended Complaint") is the operative complaint in the litigation.

Defendants deny all liability in the litigation and believe they would have prevailed if the case had proceeded to trial.  Nonetheless, Defendants have opted to settle the litigation to avoid the burden and expense of continued litigation and eliminate potential disruptions of their day-to-day businesses.  Defendants believe that settling the case will provide fair compensation to consumers while allowing Defendants to focus their energies and resources on providing their customers with superior service and value.

The Amended Complaint alleges, *inter alia*, that Defendants violated the FCRA, 15 U.S.C. § 1681, *et seq.*, in connection with their use of criminal background checks in the hiring process.  Specifically, Plaintiff alleges that Defendants violated the FCRA by allegedly: (1) providing Plaintiff and the class members an outdated description in writing of the rights of the consumer under the FCRA ("Summary of Rights") when it sent those individuals a Pre-Adverse Action Notice; and (2) failing to provide Plaintiff and the class members a Summary of Rights and a copy of their consumer report a sufficient amount of time prior to taking adverse action.

Throughout discovery and settlement process, the parties vigorously disputed the merits of Plaintiff's claims.  This process included numerous rounds of discovery by all parties, multiple subpoenas *duces tecum* to third-parties involved in the acts at issue in the litigation, numerous negotiations regarding stipulations of fact, and Defendants' deposition of Plaintiff. Throughout this process, Defendants have always denied, and continue to deny, liability for any

of the allegations in Plaintiff's Amended Complaint. Nonetheless, during the course of discovery, the parties began to enter into contentious and arm's length settlement negotiations.

At first, these settlement negotiations consisted of numerous telephone and in-person discussions between counsel and exchanging various correspondences regarding the litigation. These exchanges ultimately led to a ten-hour mediation session in Washington, D.C. This mediation session was facilitated by an experienced former United States District Court Judge, James R. Robertson, and the settlement process as a whole was monitored by United States Magistrate Judge Hannah M. Lauck. As a result of this hard fought, lengthy, and arm's length negotiation process, the parties entered into a settlement agreement. (ECF 55-1).

The settlement agreement establishes a settlement fund that will be used to compensate consumers for alleged violations of the FCRA dating back to 2006. Although the settlement is structured with only one settlement class, monetary compensation will be distributed to two different categories of class members within that settlement class based upon the date on which the consumer was sent the allegedly improper notification under 15 U.S.C. § 1681b(b)(3).[1] In total, Defendants have caused to be deposited by their insurers and/or indemnitors three million dollars ($3,000,000) into the settlement fund. The settlement fund is to be used for payment to the settlement class members, an incentive award to Plaintiff, attorney's fees and costs of class counsel, and the portion of notice and administration expenses not borne by Defendants or their indemnitors and/or insurers. Any excess funds remaining in the settlement fund after all distributions have been made in accordance with the settlement agreement shall be used for charitable purposes consistent with the settlement agreement's terms.

---

[1] Class members who were sent Section 1681b(b)(3) notifications prior to October 17, 2009 receive less money than those who were sent such notifications on or after that date because of the strong statute of limitations defense Defendants have in response to claims asserted by consumers in the former category. *See* 15 U.S.C. § 1681p.

On January 15, 2013, Plaintiff filed the Joint and Consent Motion for Preliminary Approval of Settlement, Appointment of Class Counsel, Certification of the Settlement Class, and for Approval of the Form, Manner and Administration of Notice, along with a memorandum in support of the same.  (ECF Nos. 55 & 56).  In compliance with CAFA, Pub. L. No. 109-2, 119 Stat. 4, Defendants served written notice of the proposed settlement on the United States Attorney General and the Attorneys General of all fifty states, the District of Columbia, and all United States territories in which one or more class members reside. (ECF No. 60).  None of these regulatory authorities have objected to the proposed settlement.

On February 4, 2012, upon consideration of the parties' preliminary approval motion and the record, the Court entered an Order of Preliminary Approval of Class Action Settlement. (ECF No. 68).  Pursuant to the preliminary approval order, the Court, among other things, (i) preliminarily certified (for settlement purposes only) a class of plaintiffs with respect to the claims asserted; (ii) preliminarily approved the proposed settlement; (iii) preliminarily certified the class representative; (iv) preliminarily appointed the class counsel; and (v) set the fairness hearing for May 24, 2013.

## II.      Final Approval Should be Granted and the Objections Should be Overruled

The proposed settlement is in all respects fundamentally fair, adequate, reasonable and in the best interests of the class members.  This is so for a variety of reasons; including: the monetary benefits the class members will receive, the relative strengths of the parties' cases; the complexity, expense, and probable duration of further litigation; the risk and delay inherent in possible appeals; the risk of collecting judgment obtained; and the reception by class members. *See In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009).

This brief supplements Plaintiff's memorandum by focusing on two factors pertinent to the Court's consideration of the fairness and adequacy of the proposed settlement: the strengths and weaknesses of the parties' claims and defenses, and the amount and nature of opposition to the proposed settlement.

As discussed below, Defendants have substantial defenses to the allegations of technical noncompliance and willfulness, as well as to class certification. The strength of these defenses weighs heavily in favor of approval of the proposed settlement. Further, the few objections and, in turn, the substantial acceptance of the settlement by the class members, leaves no doubt that the settlement is fair, adequate and reasonable. Thus, the settlement should be approved.

## A. Strengths and Weaknesses of the Parties' Claims and Defenses

### 1. Plaintiff Risks Being Unable to Prove Any FCRA Violation, Much Less Any Willful FCRA Violation

The FCRA does not provide for strict liability. *Smith v. Sears, Roebuck & Co.*, 276 F. Supp. 2d 603, 609 (S.D. Miss. 2003). To recover damages for an alleged violation, Plaintiff must prove more than a mere technical violation. Plaintiff must prove *both* a technical violation *and* that the violation was performed either negligently or willfully. If Plaintiff proves a technical violation and that it was performed negligently, Plaintiff is entitled to actual damages, *see* 15 U.S.C. § 1681o, whereas, if Plaintiff proves a technical violation and that it was performed willfully, he is entitled to statutory damages. *See* 15 U.S.C. § 1681n.

Because certification of a class under Section 1681o would be difficult (if not impossible) due to the individualized issues that would exist related to class members' alleged actual damages, *see* Part II.A.2, *infra*, it is imperative for a class action plaintiff to attempt to prove a willful violation of the FCRA under Section 1681n.

The Supreme Court in *Safeco Insurance Co. of America v. Burr*, 551 U.S. 47 (2007), recently established a two-part inquiry for determining whether an FCRA violation was willful under Section 1681n: (1) objective reasonableness; and (2) subjective intent. The first of the two inquiries assesses whether the defendant's attempts at FCRA compliance were "*objectively unreasonable.*" *Id.* at 69-70 (emphasis added). In other words, even if a technical violation has occurred, "a violation does not cross the willfulness threshold just because a defendant's interpretation is erroneous; it must instead be 'objectively unreasonable.'" *Long v. Tommy Hilfiger U.S.A., Inc.*, 671 F.3d 371, 376 (3d Cir. 2012) (citing *Safeco*, 551 U.S. at 69).

According to a recent Third Circuit decision, the Supreme Court's *Safeco* decision "established a safe harbor against liability for willfulness." *Fuges v. Southwest Fin. Servs., Ltd.*, 707 F.3d 241, 248 (3d Cir. 2012). Regardless of whether the court ultimately disagrees with a defendant's interpretation of the FCRA's technical requirements, "[a] company cannot be said to have willfully violated FCRA if the company acted on a reasonable interpretation of FCRA's coverage." *Id.* Thus, if the statutory provision at issue provides for a spectrum of objectively reasonable interpretations, the defendant cannot be said to have acted willfully if its interpretation falls within that spectrum. *See Shlahtichman v. 1-800 Contacts, Inc.,* 615 F.3d 794, 803-04 (7th Cir. 2010) ("[E]ven if its construction of the statute turns out to be mistaken, it is objectively reasonable nonetheless for all of the reasons we have discussed. Consequently, if 1-800 Contacts did violate the statute… it did not do so knowingly or recklessly.").

Only if a court finds that a defendant acted objectively *unreasonably* should it proceed to the second stage of the willfulness inquiry and assess whether the defendant acted with an improper subjective intent. Thus, in order to prevail on a claim of willfulness, Plaintiff's claims would not only have to survive the threshold objective inquiry regarding reasonableness, they

would also have to survive an inquiry into Defendants' subjective behavior in performing the actions at issue in the Amended Complaint. This is a high burden that creates a significant litigation risk for Plaintiff, particularly in circumstances where, as here, there is no authoritative agency guidance or court of appeals decision disapproving the particular conduct in question.

Defendants have substantial defenses to each and every one of Plaintiff's theories as to how their conduct *technically* violated the FCRA. These defenses grow even stronger when the Court considers the lack of authoritative guidance Defendants had at their disposal with respect to what action is necessary to comply with the FCRA, and, thus, the difficulty Plaintiff will have in proving that any alleged FCRA violation was willful.

With respect to Count One, Plaintiff faces the substantial risk that the Court will determine he was not entitled to any Summary of Rights because the alleged adverse action taken against him was not based in whole or in part on his consumer report but, instead, was based on the fact that he had lied about his criminal history on a previous application. The Supreme Court requires a plaintiff's consumer report to be the "but for" cause of any adverse action, which Plaintiff would have very real difficulty proving at trial. *See Safeco*, 551 U.S. at 63. Moreover, Plaintiff likely already received a Summary of Rights in 2007, prior to the actions which constitute the basis his allegations in the Amended Complaint. This mitigates any claim Plaintiff could make that he never received a proper Summary of Rights from Defendants. Further, the Summary of Rights Plaintiff received along with his Pre-Adverse Action Notice was substantially similar to the Summary of Rights Plaintiff claims he should have received, rendering any alleged violation technical and *de minimis* at most. Given these arguments with respect to technical liability, Plaintiff faces the substantial risk that the conduct alleged in the Amended Complaint does not constitute an FCRA violation at all.

With respect to Counts Two and Three, Plaintiff appears to rest his claims of liability on one of two theories.  Neither of Plaintiff's theories, however, has been adopted in any authoritative guidance from administrative agencies or the courts of appeal.  Moreover, portions of these theories have been expressly and implicitly rejected by several courts throughout the country.

Plaintiff's first theory seems to be that an "adverse action" occurs instantaneously during the initial review of a consumer's background check.  Several district courts, however, have rejected similar claims.  *See, e.g.*, *Obabueki v. Int'l Bus. Machs. Corp.*, 145 F. Supp. 2d 371, 392 (S.D.N.Y. 2001) (granting summary judgment in defendant's favor on § 1681b(b)(3) claim)), *aff'd* 319 F.3d 87 (2d Cir. 2003), *cert. denied* 540 U.S. 940 (2003).  Thus, Plaintiff faces substantial obstacles to proving a lack of technical FCRA compliance under this theory, let alone a willful or negligent FCRA violation.

Plaintiff's second theory seems to be that he was not provided a reasonable amount of time between the mailing of his Pre-Adverse and Adverse Action Notices.  This theory also faces substantial hurdles.  First, the notion that a "reasonable" amount of time must elapse between the mailing of the two notices finds no support in the statutory text.  Section 1681b(b)(3) requires that the Pre-Adverse Action Notice be sent "before" adverse action is taken. The statute does not require that any particular number of days elapse between the two notices.  Second, Defendants did not have the benefit of guidance from the courts of appeals or the [FTC] that might have warned [them] away from" the process that was being followed.  *See Safeco*, 551 U.S. at 70.  No court of appeals has interpreted § 1681b(b)(3) to require any minimum time period between the two notices, and the FTC's most recent guidance is that "[t]here is no specific period of time an employer must wait after providing a pre-adverse action notice and before taking adverse action

against the consumer." *See* 40 Years of Experience with the FCRA (July 2011), at 52 (noting that "[s]ome reasonable period of time must elapse, but the minimum length will vary depending on the particular circumstances involved").

Because the conduct at issue in Counts One through Three likely technically complied with the FCRA, there is a significant risk Plaintiff would be unable to establish any violation of the FCRA whatsoever. More importantly, however, it would be very difficult against this backdrop of less-than-pellucid statutory text, case law and agency guidance, for Plaintiff to prove that Defendants willfully violated the FCRA. *See Safeco*, 551 U.S. at 70. Absent proof of both an FCRA violation and willfulness on the part of Defendants, Plaintiff's statutory damages claims fail, the class action disintegrates, and class members recover nothing. *See* 15 U.S.C. § 1681n(a)(1). This risk is a serious and very real weakness of Plaintiff's claims that weighs strongly in favor of final approval.

### 2.      Plaintiff Faces a Substantial Risk of Denial of Class Certification

As discussed above, Plaintiff faces a formidable obstacle in proving a willful violation of the FCRA. As recent case law has shown, the failure to prove willfulness creates a near insurmountable barrier to the certification of a class action under the FCRA due to the individualized issues that arise when willfulness (and thus entitlement to statutory damages) cannot be established. *See, e.g., Comcast Corp. v. Behrend*, 133 S. Ct. 1426, 185 L. Ed. 515, 522 (2013) (recognizing that where damages are not "capable of measurement on a class wide basis," class certification is improper).

Further, courts have often refused to certify classes in situations, like the present case, in which the plaintiff attempts to employ a class action to pursue technical violations in an effort to recover statutory damages. *See, e.g., London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1255 n.5 (11th Cir. 2003); *Kline v. Coldwell, Banker & Co.*, 508 F.2d 226, 234-35 (9th Cir. 1974). This

stems from the concern that awarding massive statutory damages for conduct that caused little, if any, actual injury, is not a superior method of adjudicating a case. *See Stillmock v. Weis Mkts., Inc.*, 385 F. App'x 267, 278-79 (4th Cir. 2010) (Wilkinson, J., specially concurring) (recognizing that "class action may not be superior where 'the defendants' potential liability would be enormous and completely out of proportion to any harm suffered by the plaintiff'") (citations omitted). *But see Domonoske v. Bank of Am., N.A.,* Nos. 5:08cv066 and 5:09cv080, 2010 U.S. Dist. LEXIS 7242, at *39-48 (W.D. Va. Jan. 27, 2010). The superiority of such a class action remains an open issue and presents a serious risk for Plaintiff if he should attempt to litigate this case to class certification.

Plaintiff also faces substantial hurdles to show that common issues of law or fact predominate over individualized issues in this case. *See* Fed. R. Civ. P. 23(a)(2) & (b)(3). For example, the Court must make the following individualized determinations, among others, when assessing liability: whether each purported class member received a Summary of Rights from Defendants separate and apart from the Summary of Rights at issue; whether the consumer report for each individual class member was the "but for" cause of the alleged adverse action; and whether each purported class member received the Pre-Adverse and Adverse Action Notices the same time period apart.

Ultimately, if Plaintiff were to litigate the case through class certification, he faces significant risks of failing to successfully certify the class action. These risks include the failure to survive a rigorous analysis of superiority, commonality, predominance, and typicality, among other factors. If Plaintiff fails to obtain class certification, the class members recover nothing.

**B.      The Reception of the Proposed Settlement Strongly Supports Approval**

The class members' reception of the proposed settlement strongly supports approval. Defendants and class counsel created a notice program which consisted of mailed notices,

electronic mail notices, internet notice through a website containing information about the settlement, and a telephone assistance program that included live and voice support. *See* Settlement Agreement ¶¶ 4.2.1 – 4.2.4.  This notice program generated involvement from the class members.  As of April 26, 2013, the telephone assistance program received one-hundred and thirty six (136) calls, with fifty-seven (57) potential class members connecting to a live claimant services representative.  Additionally, as of May 3, 2013, the settlement administrator had received fifty-five (55) pieces of correspondence, some of which included address changes, name changes, and notification of deceased class members.  These numbers, of course, do not include any consumers who viewed and interacted with the settlement website, which has been accessible to class members for several months.  Despite the notice program – which had a delivery rate of roughly 80%  – only six (6) class members filed objections to the settlement and only twenty members (20) submitted requests to opt out.

The six objectors represent an extremely minute portion of the more than 64,000 class members.  The small percentage of class members who have objected to the proposed settlement is strong evidence of the settlement's fairness and reasonableness.  *See In re Jiffy Lube Sec. Litig.,* 927 F.2d 155, 159 (4th Cir. 1991). *See also In re Mills Corp. Sec. Litig.*, 265 F.R.D. at 257 ("Thus, an absence of objections and a small number of opt-outs weighs significantly in favor of the settlement's adequacy.") (citations omitted); *In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 668 (E.D. Va. 2001) ("Because 'the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy,' the lack here of any objections to the partial settlement and the small number of class members choosing to opt-out of the case strongly compel a finding of adequacy.") (citations omitted).

Numerous courts have held that objection rates as low as the rate in the present case strongly support approval of a class action settlement. For example, in *D'Amato v. Deutsche Bank*, 236 F.3d 78, 86-87 (2d Cir. 2001), the Second Circuit held that the district court properly concluded that the receipt of eighteen objections out of the 27,883 notices that were sent to the class members "weighed in favor of the settlement." *Id. See also Leonhardt v. ArvinMeritor*, Inc., 581 F. Supp. 2d 818, 839 (E.D. Mich. 2008) (holding that one objection in a one thousand member class "indicates that the settlement is fair, reasonable, and adequate"); *McBean v. City of New York*, 233 F.R.D. 377, 386 (S.D.N.Y. 2006) (holding that the receipt of only four objections out of 40,352 class members "indicates the overall approval of the settlement by the class, and favors the approval of the settlement by this Court").

This low objection rate is especially compelling in light of two additional factors: First, the case involves background reports, which deal with and affect personal subjects such an individual's criminal history and employment prospects. The fact that the objection rate is lower here than in other approved settlements involving more mundane subject matter reflects the outstanding result achieved by Class Counsel on behalf of the class members. Second, of the more than fifty Attorneys General who received a notice of the proposed settlement under CAFA, not a single one of them lodged an objection. (ECF No. 60).

In addition to the number of objections strongly counseling in favor of settlement, the *substance* of the six objections also strongly support approval of the settlement. All of the proposed objections are based on individualized circumstances that the objector believes renders the settlement objectionable as to him or her. The substance of the objections can be grouped into two categories: (1) objection to the amount of the settlement based on circumstances

pertaining to the individual objector;[2] and (2) objection to the rationale underlying the alleged employment decision pertaining to the individual objector.[3]

For a variety of reasons, the substance of these objections does not upset the conclusion that the Court should approve the proposed settlement. First, several of the objectors vaguely claim that they object to the settlement because the payment amounts are insufficient based on the objector's own individual circumstances. It is established, however, that "[o]bjections based purely upon individual claims of loss do not warrant disapproval of the proposed settlement." *EEOC v. McDonnell Douglas Corp.*, 894 F. Supp. 1329, 1335 (E.D. Mo. 1995). *See also In re State Police Litig.*, No. 5:89cv606(AHN), 1999 U.S. Dist. LEXIS 21491, at *12 (D. Conn. Dec. 2, 1999) (holding that objections based on "complaints that the amount of damages to be paid each individual plaintiff is insufficient" did not counsel against approval of the proposed settlement); *McGlendon v. Continental Grp.*, 802 F. Supp. 1216, 1222 (D.N.J. 1992) (finding objections consisting of "personal complaints regarding the estimated amount of individual awards" did not change the calculus that the settlement was fair and reasonable).

Second, the type of individualized harm that is alleged in the few objections would not be recoverable in a class action even if the case had proceeded to trial. In the seminal case of *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011), the Supreme Court recently made clear that a class action is not the proper vehicle for claims turning on individualized issues, as opposed to "common contention[s]" "capable of classwide resolution." *Id.* at 2551. The Supreme Court reiterated and expanded this holding when it held in *Comcast Corp. v. Behrend* that "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."

---

[2] The objectors whose objections fall into this category are Curtis Westbrook (ECF No. 68), Eric O'Donnell (ECF No. 65), Lisa M. Johnson (ECF No. 67), and Janet S. Stacey (ECF No. 66).

[3] The objectors whose objections fall into this category are Willie Tharps (ECF No. 63) and Jamie S. Miller (ECF No. 64).

*Comcast,* 185 L. Ed. at 522.  Thus, the objectors' allegations of individualized damage issues do not upset the factors strongly supporting approval of the proposed settlement.

Third, a small subset of objectors base their objections on issues unrelated to the issues raised in the Amended Complaint.  For example, one objector claimed that the use of an "older criminal record didn't seem fair." (ECF No. 65).  Disagreement with the substantive reason for the alleged employment decision is unrelated to the claims being settled, which relate to the timing of Pre-Adverse and Adverse Action Notices and other associated requirements imposed by the FCRA.  Because such objections have no bearing on the subject matter of the current litigation, they do not provide a basis for declining to approve the proposed settlement.  *See, e.g.*, *Knight v. Alabama*, 469 F. Supp. 2d 1016, 1035 (N.D. Ala. 2006) (finding that objections unrelated to the goals of the litigation do not provided a basis for withholding settlement approval).

At bottom, the small number of objections does not undermine the fairness and adequacy of the proposed settlement.  The objectors generally object to the amount and substance of the settlement based on individualized issues particular to the objector.  Such objections are insufficient to upset the settlement to which roughly 64,500 class members have consented.

## III.   Conclusion

For the foregoing reasons, Defendants respectfully submit that the objections to the proposed settlement are without merit and that the Court should enter an order giving final approval to the proposed settlement.

Dated: May 14, 2013                          Respectfully Submitted

                                             **KMART CORPORATION &**
                                             **SEARS HOLDINGS CORPORATION**


                                             By:    /s/ John C. Lynch
                                                         Of Counsel


John C. Lynch
Virginia State Bar No. 39267
*Attorney for Defendants*
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
Email:  john.lynch@troutmansanders.com


## CERTIFICATE OF SERVICE

I hereby certify that on the 14th day of May, 2013, I electronically filed the foregoing

with the Clerk of the Court using the CM/ECF System which will then send a notification of

such filing (NEF) to the following:

**Counsel for Plaintiff**
Christopher Colt North
751-A Thimble Shoals Blvd.
Newport News, VA 23606
Email: cnorthlaw@aol.com


Leonard A Bennett
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Email: lenbennett@clalegal.com


Susan M. Rotkis
Consumer Litigation Associates
763 J Clyde Morris Boulevard, Suite 1A
Newport News, VA 23601
Email: srotkis@clalegal.com


16

William L. Downing
The Consumer and Employee Rights Law Firm PC
751 A Thimble Shoals Blvd
Newport News, VA 23606
Email: wdowninglaw@aol.com

/s/ John C. Lynch
John C. Lynch
Virginia State Bar No. 39267
*Attorney for Defendants*
TROUTMAN SANDERS LLP
222 Central Park Ave., Suite 2000
Virginia Beach, Virginia 23462
Telephone: (757) 687-7765
Facsimile: (757) 687-1504
Email:  john.lynch@troutmansanders.com

20475294v2

17